Your help was a point of counsel here at picking up, picking this up pretty late, but, but helpfully. Of course, your honor. Thank you. Please proceed. Thank you, Judge Loken. May please the court. Good morning, your honors. Paul Brussati on behalf of Appellant Kenneth Charron. The court should reverse the judgment of the district court, granting Appellee Larry Allen summary judgment on claims of retaliation and deliberate indifference to Mr. Charron's serious medical needs because genuine issues of material fact exist as to whether Mr. Allen, a food service manager at the prison, interfered with Mr. Charron's ability to receive a renal diet, some form of which had been given to Mr. Charron periodically since 2002 to treat his serious kidney problems, most recently chronic kidney disease and renal cancer. In granting summary judgment, the district court incorrectly... Let me just stop you and make sure we're on the same page here. As I understand it, Mr. Allen in his pro se brief said he's not appealing the immediate order that Mr. Allen did not participate in the stopping of the renal diet. And so we are, we are really going to the issues that the district court thought were not preserved. And in that regard, what's the status of exhaustion on those claims? Was that raised in the district court and considered? Well, your honor, I think Mr. Charron did. So he, I think he noted that he didn't appeal. There was two remaining defendants remaining in the district court. There was Dr. Paniagua and there was Mr. Allen and Mr. Charron and Mr. and both were granted summary judgment. And Mr. Charron did appeal the claims against Mr. Allen as to, as to now, Mr. Allen was not the individual who stopped the renal diet, meaning he was not the doctor. He's not a doctor. He did not make the decision to end the renal diet, but the allegation, as Mr. Charron mentioned, his brief was not simply that Mr. Allen ended the renal diet. It was that Mr. Allen interfered with, with his, his diet in a way that led to it's it's ending in March of 2018. Yes, that was the way I understood the, the pro se brief. And I took that to mean that, that we don't have to consider whether getting summary judgment on the stopping the diet part of the claim on the grounds that Allen didn't do it, wasn't a responsible official that we, that we, that's not on our plate anymore. I would agree, your honor. I think, I think the actual stopping of the diet, but the, I think the allegation in the district court, the retaliation and the deliberate indifference to serious medical need still involves the renal diet, because if you look at the record, it involved the grievances about the interference claims. That's, that's correct, your honor. All, all, all pre-stopping, or I think probably initially he was including the stopping, but that's gone. And Dr. Penigula, he didn't appeal that summary. That that's right. Dr. he didn't appeal the doctor, right. The doctor. And I think the reason your honor is because the record shows that Dr. Penny Agua was not the actual doctor who stopped the renal diet. It was Dr. Lovelace, who's not a party to this appeal and wasn't a part, and was actually dismissed early on in the case because those claims against Dr. Lovelace did not meet the immediate danger standard or the three strikes law, three strikes exception to 1915 G, which I would like to briefly address because the court asked, um, asked for counsel to address that issue. Um, in the district court addressed this in docket number 10 in the, in the, in the record. Um, and, and the court asked in, in this court asked whether claims that do not meet the immediate danger exception can be joined with claims that do. I think the answer to that question was answered by this court in McAuliffe versus Tony, which the district court relied on in severing the claims where this court held that if you have claims that don't meet the imminent danger exception, and you have claims that do, you must sever the district. The proper thing to do is sever the claims that do not dismiss those pending the petitioner, um, paying for paying the full filing fee and filing a separate complaint. And then you allow the two, the claims that do, that do meet the immediate danger exception, uh, to proceed and form from apocryphal, um, without paying the full filing fee. Um, and so that, and that's, and that's where I was going because, uh, if the, you know, if you sever the unexamined, if you sever, well, we, we don't have a record with respect to exhaustion. So the, the, the procedure that was at issue in McAlphin, uh, is not presented by at least not squarely presented by this record. Is it well, well, you're, are you, are you, are you asking? Well, I still think that base, if you the district court, I agree that there's no, there's no, the, the district court made that ruling and docket number 10 before Mr. Allen and doctor, any defendant had actually been served. They made the, the district court made the ruling on, um, on the immediate danger before any party or the defendants had an opportunity to, um, oppose, uh, that motion. But I do think if you look at again, immediate danger is based on the face of the complaint. Um, and based on the face of the, of the, in this case, um, Mr. Uh, Sharon filed both the complaints in the district court, which is, I think is relevant where he alleges he suffered, uh, pain, the worsening of his kidney condition, a loss of 20 pounds. And then you also have his motion to proceed and form a papyrus that was filed in the district court, which the basis of a motion to proceed and form a papyrus on appeal where he, where he follows up and says that he had seen doctors who asked him, Hey, you want to, you know, are you, are you taking a medically ordered diet? Because if you don't, it's going to get worse. And that document is, um, document 52 dash one in the district court. And so I think this court can evaluate whether the district courts. Okay. But let me stop you procedurally here because I think you're, you're getting at what I think is the crux of the problem. Um, Sharon was of course pro se at the time. Uh, if, if the McAlphin says there's really two questions, because the first part of the McAlphin ruling was that some of the claims hang together. And so a, a finding as to imminent harm included at least the last steps of the process of the alleged inflicting the alleged harm. So we could have that with respect to the interference claims, but we don't have a record or a ruling on, on that because it wasn't even argued. Then the second half of McAlphin says there were also some clearly unrelated claims and those should have been if, if, and they were unexhausted in that case, so they should have been severed. Now we're, let's, let's take it in two steps. Are you, are you arguing that there was error in determining the scope of the imminent harm? Mr. Sharon, the pro se brief doesn't focus on that. Well, I think, well, Mr. I think Mr. Sharon does say that, that the, that the, of course the process is, I agree that his brief does not focus on, on the, not in the section 19 exhaustion, or the, excuse me, the immediate danger. But in, in in arguing under the eighth under this deliberate indifference claim, which they said, I think it's a similar standard as far as like immediate, as far as harm to serious or deliberate indifference to serious medical needs. Mr. Sharon did say, I think, and the reason your honor, I don't think there's a record on it because there, there wasn't really an opportunity for Mr. Sharon to get there because the district court very quickly on Mr. Allen's motion for summary judgment said that because Mr. Allen was not the one who made the decision to cancel the renal diet. He was, but, but, but with respect to each grievance, each, I mean, the interference claims are only, are only available for judicial review if they were exhausted and there were multiple and there were multiple grievances. And with respect to each grievance, Mr. Sharon could have brought the denial to court once it was fully exhausted. And then it would have been subject to the question of, are you, does this, this denial of this grievance puts you in imminent harm today? My guess is the answer would have been no. Well, he was being fully treated. He most, some of these, he didn't even have the cancer yet, I think for some, and some of these points in time. So each of those claims had been exhausted and brought to court would have been bounced under 1915 G. So how can they be dragged in with the later, the later ruling? Well, your honor, I will say that he did file grievances. I mean, Mr. Mr. Sharon filed a grievance on, on April 10th of 2018. Council grievance doesn't exhaust. Exhaustion under PLRA is much more complex than that. We don't have a record as to whether he went through the proper appellate procedures. And then what's, and then what's, and is it, and if so, is it time bar? Well, no, I, I mean, I agree, your honor. I get it. There's not a record on that, but I, but I'd still counsel. Let me, let me ask it this way or approach it this way. If we were to find that summary judgment was granted improperly as a matter of law under section 1915 G, wouldn't it be up to the district court to sort out exhaustion? So, uh, I, I think so, your honor. And I think also that, um, under the, under the immediate danger exception, I should, I should've mentioned this judge Logan in response to some of your questions, but if you find that, and this is what happened in, um, or this is what the court said that it should do in, um, Martin versus Shelton, which is one of the cases the court asked or cited in its, in its questions to miss to counsel. And it said that, that normally, if we find that the, the immediate, it was, there was not immediate danger to allow the petitioner to proceed in the form of pauperous, we would remand to allow the petitioner to fight, to, um, uh, pay the full filing fee and proceed with his lawsuit. But because summary judgment was proper in that case, the court didn't see the need to do so. So judge Gross to your question, I think if the court, the court should still answer the question as to whether summary judgment was appropriate in this case, because I think that will determine what the court does with respect to the section 1915 G and exception to, um, the informal or the, um, the three strikes rule. Uh, so I do think the propriety of the summary judgment, uh, or evaluating the propriety of the summary judgment is still appropriate. And as to that question, um, judge Gross and your honors, I think again, the, the Mr. Sharon's claims, uh, were much broader than Mr. Allen or the district court portrayed them. They were that Mr. Allen interfered with his diet. And, you know, I think one of the things, I think there's two, two real issues. One is that Mr. Allen relies on this, um, Missouri department of corrections policy, or what he says is the Missouri department of corrections policy, which is based on a 2008 memorandum from Dr. Elizabeth Connelly that says the renal diets are for dialysis patients only. But in the record that is contradicted by two documents, the Missouri department of corrections manual and counsel. That's where you get squarely into the 1915 G problem because there's no way that, that, uh, for example, if it was a, if it was a, uh, a pork diet case, which we often see, well, the, the, the, the kitchen staff didn't, didn't follow my, my Muslim teachings three times last month. Well, that's not too far away from these diet claims. There's no way that's an imminent harm claim unless, unless it can be attached, attached, clipped onto a completely unrelated claim. That's, that's, that's the issue that, that we were concerned about. No, I understand that your honor. I guess I still think the way that Mr. Again, I think a couple of things, I think, again, as you mentioned, Mr. Chairman's pro se in the district court and pro se complaints and pro se pro se evaluation complaints is given a more liberal construction than had Mr. Sharon been appointed by counsel. And so based on, based on that, and based on the allegations, and again, the district court's order and district and document 10, um, based on what it, how it, how it evaluated Mr. Sharon's claims, specifically as they relate to Mr. Allen, which is the claim for this court. Um, again, Mr. Mr. Sharon would argue that those did meet the standard, uh, for accepting, uh, or the exception standard of the three strikes rule, uh, which he, which he, which we don't dispute that he met, um, to, to allow his claim to proceed, uh, in form of pauper as the district court. And so that order by the district court, we would argue is correct in that matter. Um, one, one more point your honor on the propriety of the summary judgments. Um, Mr. Allen again, claims that he frames this as, as he received orders from the district or the doctors and then implemented the diet. But if you look at document 43 page 16, which is this email, these emails on January 18th of 2018, and this email was submitted in support of Mr. Allen's motion for summary judgment. Um, he, he, he, he frames us as him getting noticed that Dr. Lovelace requires, uh, only renal diets for dialysis patients, but he's the, Mr. Allen is the one person precipitated this email on Thursday, January 18th, 2018. He is a subject as renal diets. And he says, attached to the communication I was talking about now, the date of this document is January 18th is seven days after Mr. Chairman's renal diet is renewed for another year by horizon health by a doctor. And it's renewed for another year until January 11th, 2019. And so seven days later, Mr. Allen emails out of the blue horizon health nurses saying, can you review this and let me know how to proceed over time. These diets have been added back and probably never should have been. And then on a document 43 page 17, again, this is all submitted by Mr. Chairman in opposition to Mr. Allen's motion for summary judgment, uh, March 29th, 2018. It's a follow-up from Ms. Carmen Niemeyer, a nurse at the Northeast Correctional Center. And she says to Mr. Allen directly, four of the five offenders that you requested a review of had their renal diets discontinued today by Dr. Lovelace. They are first name on the list, Mr. Sharon. And so based on these, this, these documents, your honor, and viewing the facts in light, most favorable to Mr. Chairman, given him the benefit of reasonable inferences, Mr. Chairman respectfully request the court reverse the summary judgment of the district court and remand the case for further proceedings. And I have a minute left. I'll reserve unless the court has any other questions. I I'll reserve the last minute for rebuttal. Thank you. I think you've covered the, uh, the, uh, covered the problem very well. Thank you. Thank you. Mr. Johnson. I think you're muted. Thank you, your honor. And may it please the court, uh, Jeff Johnson for appellee, Larry Allen. Uh, the grant summary judgment should be affirmed. Mr. Uh, chairman can simply not show causation on the only two claims that are, uh, even remotely alive at this point. Uh, there is no genuine question. That's the question is whether they are more, much more than remotely alive. Yes. So as I understood, uh, what your honor, uh, what you're talking about has been conceded. Uh, well, I, I think, uh, I think it's actually the, the issue as to the final stopping of the renal diet has been conceded. Uh, I think both in the briefs, uh, and, and below the issue as to exhaustion. Um, I don't, I don't think it has actually, uh, come up with in the case, uh, at court, uh, should have done, uh, which is usually where you see exhaustion claims, uh, when the court referred, referred counsel to, uh, 20 USC, 1915 G, um, that issue, uh, just goes, we, it's already settled that he has, uh, he has three or more, uh, previous frivolous, uh, or otherwise dismissed claims in this case. So the counsel, the language of section 1915 G refers to civil actions, not claims. Does it not? Yes, your honor. It says in no event, shall a prisoner bring a civil action or appeal a judgment in a civil action under this section. If he's had on three or more occasions, uh, brought an action or an appeal in the court of the U S uh, this frivolous malicious or fail to state a claim upon which relief may be granted unless the prisoner is under imminent danger. Uh, but the, I think the key here is that section 15 G 1915 G. Let me ask you this, you're talking about the pre-screening process and that's probably important here. And my question would be, is there any indication that the pre-screening process included, uh, took into account, uh, the controlling law of McAlphin? It certainly did take into the controlling law of McAlpin. Wait, how would we confirm that? How would we can, because he was allowed to proceed on the, uh, on the retaliation and the, uh, um, uh, yes. Wait, wait, you just said that exhaustion is typically considered at, in the 1915, a screening. That's right. Galvin says if there are unreal, if there are claims unrelated to imminent harm claims filed by a three-star strikes, barred inmate, then you should sever. Yes, that wasn't, that wasn't done. Instead, they were just thrown out. And on what basis? So I think we need to be a little more specific, especially with the pro se brief here. No, no, no, no. I'm, I, well, you can, well, you can say, I can't answer your question. That's always proper, but you're not, you're, you can't go somewhere else. No, no, no. So I think, I think the issue is here is that, is that as in most pro se briefs, uh, they have many claims, they have many claims in one action, uh, as in, I have sort of divvied them up into, uh, particular timeframes in which they might've happened. Uh, we have the, we have the March, April, uh, 2018 claim, which is the final stopping of the, uh, um, of the renal diet. Then I think, uh, I think earlier we have, uh, earlier, I think for the retaliation claims, he has in paragraphs 23 and 24 of his complaint, which is June 26th and June 27th in 2015. Uh, I think we then have a late July and August 2015 claim. Um, and I think we have a claim for August 11th through 15th of 2016, and that's in paragraphs 35 and 37 of the pro se complaint. Well, counsel, counsel, let me, let me just stop you. That it's, all you're saying is it would be obvious to a sophisticated 1915A screener who was aware of the law established in McAlphin that, that this, this collage of complaints, some related, some unrelated doubtless include, um, claims that, that have a, an imminent harm, uh, have no, no nexus to the imminent harm claim. Now, what do we do? And the answer was to, to somehow serve it up to the district court, probably with no, no underlying, um, um, uh, an analytical help for just throwing them out. Well, unless, unless you have any nexus to the final claim, and this is why, because the incidents that I'm, that I'm referring to, uh, the June, 2015, July, August, 2015, August, 2016, these are his retaliation claims where he essentially says that the medical diet stopped. Right. And then he filed a complaint. So it doesn't actually matter to a certain extent that whether or not they were screened or not, the claims are futile to begin with because he can't prove causation for retaliation claim, because he's always alleging, uh, in all of these cases that, uh, the diet stopped and then he filed a complaint and his protective activity in this case is filing the complaint is what he alleges. So he's getting to the causation sides backwards on this. Mr. Johnson, I'd like to go back to what I, what I think was the gravamen of Judge Grass's question. Okay. If you look at the statute, it talks in terms of a civil action, not breaking it down into counts. So this civil action was filed with a claim of imminent harm that it has subsequently been conceded or disposed of, but there was an allegation or potential, uh, imminent harm in the civil action. So doesn't the plain language of 1915 G, um, sort of auger toward a reading that would allow pending or other unrelated ones to also be filed IFP. Uh, just to be clear, are we talking about, uh, unrelated claims against, uh, parties who were allies? Well, what I'm talking about is claims that do not have an imminent harm aspect. But if you look at the term civil action, that seems to include everything that was filed and therefore it should all be allowed to be filed IFP. What isn't that a plain reading or not? Uh, so I think it is an intuitive reading, but I don't think it's necessarily a plain reading, especially in the context of the PLRA. Now you're aware that you're aware that at least four circuits have adopted that position. Uh, I, I am aware, but I think I have a slightly different take on how this works. Uh, so the statute says that no event shall bring a civil action, uh, in, I think it's or the Clements, this court, when it was talking about the strike rule, which is later in that, in that, in that section, it talks about a civil action says it's the entire action, but that is contrary to the Supreme court precedent in Jones v. Bach. Uh, and that's at 549 U.S. 199. And they're just talking about the exhaustion claims. So it's a, so it's a, uh, it's a different part of the 1950 of the screening process. But essentially what the court says is that, uh, a unanimous court says that the point of the PLRA was to have fewer and better prisoner suits and that the general rule when we deal with PLA, when we're talking about civil action, uh, versus claims is that, uh, is that the, is that we keep the good claims and we kick the bad claims. And then that's how we streamline through the PLRA. So in this case, when we're talking about action, well, judge, judge Logan referred. And I think correctly that there are four circuits that, that go the other way. Are there any that go the way you are suggesting? Well, so I think I have a, I have a hypothetical that I think works in this case to explain it a little bit better. So if we have a, if we have an approach, they can find the four different claims and half of them allege, uh, uh, the imminent danger of serious physical injury. What the court should do is the court should sever the two that don't and allow the separate complaint to go through. But you still only have one action because you only have one filing fee, right? Counsel, counsel, that's not a hypothetical. That's Martin V Shelton, right? So, yeah. So your answer is yes. You, you, you are contrary to the, the circuit is contrary to the other four, at least in, at least by fair interpretation. No, I think, I think the, um, I think also was there in Martin, was there an allegation of imminent harm? Uh, yes. In Martin, there was an allegation. It was a 1915 G case, uh, that, that judge Logan, uh, authored and in, in the, the imminent danger that he, that was alleged there, uh, as I remember it was going, uh, going outside in inclement weather. Uh, and, uh, I think the other one was that he was, uh, that he was being put in a cell block with people near his enemies list. And the court said that, uh, that that qualified that the second part qualified for the Penney and, and Getshumed the Metin and that's nine 38 F third eight 47, the sixth certainly explains that serious physical injury, uh, means potentially dangerous consequences, such as death or severe or severe bodily harm. Uh, and of course, imminent danger does not mean five years later, I think if we were to do a 1915 G analysis on the claims presented by Mr. Chair, and they would probably also all still fail under the imminent danger. Mr. Johnson, perhaps I'm wrong, but I thought at page 10 50, Martin said that the plaintiff's complaint made no allegation of ongoing danger. Am I wrong about that? No, you're right, Your Honor. I, I misspoke in, uh, and, uh, That's why I'm concerned. I, I sort of think Martin might be distinguishable. Am I? That Martin's distinguishable because there, because there wasn't any allegation of dangers. Got it. Exactly. And there is here. That's my, see, I'm not so sure that, that Martin is, is on all fours here. Uh, yeah, so it is not on all fours in the sense that the court, you know, eventually found that there wasn't imminent danger or Martin, which I think it is still necessarily implied or still necessary to the judgment where the court went through and said that we can, we have to sever the claims, uh, as in, uh, in McAuflin. Are you familiar with Ashley versus Dilworth? Yes, Your Honor. Isn't that more on point than Martin? Yes, I think Ashley versus Dilworth is more on point, uh, than Martin in this, Martin versus Shelton in this particular case. Uh, I also think that McAuflin is more on point in this particular case as well. Uh, for what, for what the court is, what the court is asking about. Uh, so- Counselor, let me just ask a clarification question here. I guess it was my understanding that the district court already found that there was imminent danger. That, is that before this court? We're not, we're not reviewing that finding, are we? Uh, according to 1915G, that, that determination has to be made when the action is brought, which is when it was filed, and also when the, when the, when it is appealed, when the judgment is appealed, and that is now. So that is properly before the court. Mr. Johnson, is that argued in your brief?  Uh, on what basis do we, do we, do we now throw this out because, what, his cancer's gone or he's died or what? Well, so 1915G doesn't throw the case out. It just requires the payment of the IFP filing fee. Okay, well, that would, that would mean paying the appellate filing fee. That's not even, that's not an issue, at least not, not directly. Right. So, so is, is the finding with, of imminent harm include vis-a-vis by stopping the diet? Is that an issue on appeal? I don't think that's an issue on appeal because it's been conceded at this point. Because what? Because that's your client, your client concedes it or what? I'm sorry. Let me be clear. I think that the issue as to the, the stopping of the renal diet has been conceded by. Wait a minute, let's not jump. The question was, is, is, is the district court's finding of imminent harm on appeal, an issue on appeal. And you dodge all around, all around the barn trying to stop, trying to avoid answering that question. You could have cross appealed that finding. You didn't. So therefore it's not an issue, right? Have to cross appeal. I don't think we necessarily have to cross appeal. But you didn't argue it either. That is also true. Well, then it's okay. It's forfeited, waived or whatever. Why didn't you just say that? So we have that, we have that finding. It's based on one specific claim, stopping of the diet, which dragged out over time. So maybe that includes other claims that, but the district court did not so rule. And that seems to me on appeal. And then, and then we have claims like retaliation that are completely unrelated to the imminent harm or seem to be. That raised, that raised the broader question that Judge Grunder posed. We got them all, all, all wrapped up, don't we? Yes, sir. I think we have them all wrapped up. And in my view, it's because there was inadequate, either an inadequate screening process regarding a, a rather articulate complaint filed by a pro se, pro se inmate who was not sophisticated enough to get into 1915 G complexities. Yes, your honor. And with that, I would just ask that the court affirm the judgment of the district court. But, but on, on what basis with regard to the, these 1915 G issues. Because if they should have been, if they should have been, if they should have been severed, what, what, what's the, what's the right thing for us to do? If they should have been severed under the pre-screening, because they don't allege for under 1915 G, which is whether or not, whether or not they allege imminent danger of serious physical injury. If that is the basis that the court wants to, wants to come down for those claims, then I think the proper thing would be to remand and then ask and then have, and then have the guy have the opportunity to file the, file the IAP, the IAP might be the right. Okay. Understood. Understood. Thank you, your honor. Mr. Broussardi, your honor, did we get, did we give you a minute worth of talk further about it with my 45 seconds? Can I please, can I address judge Gross's point about whether this is before this quarter? What, you know, and Mr. Johnson mentioned that, that it's, it's, you know, it's a kind of a two tier, right? It's when initially filed the complaint. And then when you move to, to proceed IFP on appeal, well, that, or that motion to proceed in form of co-operatives on appeal was granted by the district court, judge Gross, in a docket order on docket 58. So, and that decision, either the docket 58, nor the decision by the district courts, originally granting him leave to proceed in form of co-operatives. Well, that was not raised in the appellee's brief, nor was it, nor was that appealed or cross appealed those decisions, not cross appealed. So your honors, I appreciate the court appointing me to represent Mr. Charon. And we would respectfully request that the district court's judgment be reversed. Thank you. Thank you, counsel. It's a case with some lurking difficulties and oral argument has been, has been helpful. We'll take it under advisement.